1    **WO**

2

3

4

5

6                   **IN THE UNITED STATES DISTRICT COURT**

7                        **FOR THE DISTRICT OF ARIZONA**

8

9    Taloren Govan, an unmarried man,              No. CV-10-0057-PHX-DGC

10                        Plaintiff,               **ORDER**

11   vs.

12   Security National Financial Corporation, a
     Utah corporation; Crystal Rose Funeral
13   Home, Inc., an Arizona corporation; and
     Greer-Wilson Funeral Home, Inc., an
14   Arizona corporation,

15                        Defendants.

16

17          Between May 2008 and April 2010, Plaintiff Taloren Govan worked at three

18   funeral homes owned by Security National Financial Corporation ("SNF"):  Crystal Rose,

19   Adobe Chapel, and Greer-Wilson.  Plaintiff filed suit against Defendants in January

20   2010.  Doc. 1.  The amended complaint asserts six claims arising out of the employment

21   relationship,  specifically, disparate treatment because of race and religion in violation of

22   Title VII and the Arizona Civil Rights Act ("ACRA") (count one), hostile work

23   environment in violation of Title VII and ACRA (count two), retaliation and wrongful

24   termination in violation of Title VII and ACRA (count three), various forms of race

25   discrimination under 28 U.S.C. § 1981 (count four), intentional infliction of emotional

26   distress (count five), and negligent supervision (count six).  Doc. 45.

27          Defendants have filed a motion for summary judgment.  Doc. 84.  The motion is

28

1   fully briefed.  Docs. 87, 89.  For reasons stated below, the motion will be granted.[1]

2   **I.      Summary Judgment Standard.**

3          A principal purpose of summary judgment is "to isolate and dispose of factually

4   unsupported claims."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  Summary

5   judgment is appropriate if the evidence, viewed in the light most favorable to the

6   nonmoving party, shows "that there is no genuine issue as to any material fact and that

7   the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c)(2).  Only

8   disputes over facts that might affect the outcome of the suit will preclude the entry of

9   summary judgment, and the disputed evidence must be "such that a reasonable jury could

10  return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

11  242, 248 (1986).

12  **II.     Disparate Treatment Claims (Counts One and Four).**

13         Title VII and ACRA prohibit an employer from discriminating against an

14  individual with respect to compensation, terms, conditions, or privileges of employment

15  because of the individual's race or religion.  42 U.S.C. § 2000e-2(a); A.R.S. § 41-

16  1463(B)(1).  Under § 1981, all persons have the right to "the full and equal benefit of all

17  laws and proceedings for the security of persons and property as is enjoyed by white

18  citizens," including "the enjoyment of all benefits, privileges, terms, and conditions of [a]

19  contractual relationship," and those rights "are protected against impairment by

20  nongovernmental discrimination[.]"  42 U.S.C. §1981(a)-(c).  The summary judgment

21  framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973),

22  governs Plaintiff's Title VII claims and provides a guide to the ACRA and § 1981 claims.

23  *See Fonseca v. Sysco Food Servs. of Ariz., Inc.*, 374 F.3d 840, 850 (9th Cir. 2004);

24  *Timmons v. City of Tucson*, 830 P.2d 871, 875 (Ariz. Ct. App. 1991).

25         Under that framework, Plaintiff must first establish a prima facie case of

26  _____

27         [1] Defendants' request for oral argument is denied because the issues have been
    fully briefed and oral argument will not aid the Court's decision.  *See* Fed. R. Civ. P.
28  78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

discrimination by showing that he belongs to a protected class, that he was qualified for his position, that he was subject to an adverse employment action, and that he was treated less favorably than similarly situated individuals outside his protected class.  *See Chuang v. Univ. of Cal. Davis*, 225 F.3d 115, 1123-24 (9th Cir. 2000) (citing *McDonnell Douglas*, 411 U.S. at 802).  "[T]he burden of production – but not persuasion – then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the challenged action."  *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1062 (9th Cir. 2002) (citing *McDonnell Douglas*, 411 U.S. at 802).  If the employer meets that burden, "then the *McDonnell Douglas* framework drops out of the picture entirely, and [P]laintiff bears the full burden of persuading the factfinder that the employer intentionally discriminated against him."  *Coghlan v. Am. Seafoods Co.*, 413 F.3d 1090, 1094 (9th Cir. 2005) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507-08 (2005)).

Plaintiff claims that because of his race (African-American) and religion (non-Jehovah's Witness), he was subject to several adverse employment actions:  a demotion from his manager position at Crystal Rose to a family counselor position at Adobe Chapel in November 2008, a second demotion shortly thereafter to a runner position at Greer-Wilson, a written warning about performance issues in January 2009, a pay cut in March 2009, and, finally, a third demotion from full-time runner to an on-call employee in April 2010.  Doc. 87 at 3.  The Court will address each action in turn.

**A.    The First Demotion.**

Plaintiff became the manager at Crystal Rose in August 2008.  Doc. 88 ¶ 1.  On November 21, 2008, he was demoted to a family counselor position at Adobe Chapel and was changed from a salaried to an hourly employee (from $36,000 annually to an equivalent $17.30 per hour).   Plaintiff fails to make out a prima facie case of discrimination, Defendants argue, because he cannot show that he was treated less favorably than similarly situated employees outside his protected class.  Doc. 84 at 8.  The Court agrees.

Defendants have presented evidence showing that a similarly situated employee outside of Plaintiff's protected class was treated the *same* as Plaintiff.  When Plaintiff was demoted to family counselor at Adobe Chapel, Shannon Owsley, a non-African American, was demoted from manager at Adobe Chapel to funeral arranger at Crystal Rose and, like Plaintiff, was changed from a salaried to an hourly employee (from $35,000 annually to $16.82 per hour).  Docs. 84 at 8, 85 ¶ 3.6.  Plaintiff does not dispute that this occurred, but rather objects to the employee status change form reflecting Owsley's demotion (Doc. 85-1 at 66) as inadmissible hearsay (Doc. 88 ¶ 3.6).  Defendants note, correctly, that the form is admissible as a regularly maintained business record.  Doc. 91 ¶ 3.6; *see* Fed. R. Evid. 803(6).

But even the form were found to be inadmissible, summary judgment would still be warranted.  While the degree of proof necessary to establish a prima facie case is minimal and does not even rise to the level of a preponderance of the evidence, *see Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994), Plaintiff must still produce some evidence sufficient to give rise to an inference of unlawful discrimination, *see Vasquez v. County of Los Angeles*, 349 F.3d 634, 640 (9th Cir. 2003).  "Because Plaintiff bears the burden of establishing a prima facie case, Defendants need only show that there is 'an absence of evidence to support Plaintiff's prima facie case.'"  *Strong v. Lynch*, No. C 10-0031 SBA, 2011 WL 89810, at *6 (N.D. Cal. Jan. 10, 2011) (quoting *Celotex*, 477 U.S. at 323; brackets omitted).  Defendants have met their summary judgment burden with respect to the first demotion, that is, Defendants have shown the complete absence of evidence that "similarly situated employees were treated more favorably than [Plaintiff] was treated."  *Leong v. Potter*, 347 F.3d 1117, 1124 (9th Cir. 2003).  Because Plaintiff has failed to demonstrate a triable issue as to whether he was demoted to a family counselor position because of his race or religion, summary judgment is warranted.  *See id.* (affirming summary judgment on disparate treatment claims where "the district court did not err in holding that Leong failed to establish a prima facie case of discrimination);

1   *Bodett v. CoxCom, Inc.*, 366 F.3d 736, 743-44 (9th Cir. 2004) (affirming summary

2   judgment on religious discrimination claim under Title VII and ACRA where the plaintiff

3   "failed to present any legitimate 'comparator' evidence"); *see also Gay v. Waiter's &*

4   *Dairy Lunchmen's Union*, 694 F.2d 531, 538 (9th Cir. 1982) (prima facie showing

5   required in a Title VII disparate treatment case "is nearly identical to the inquiry

6   necessary in a section 1981 case").[2]

7   **B.     The Second Demotion.**

8           Plaintiff has testified that about one week after his first demotion in late November

9   2008, Adobe Chapel closed and he was further demoted to a runner position at Greer-

10  Wilson.  Doc. 88 ¶ 11.  He admits that when his family counselor position was eliminated

11  upon closure of Adobe Chapel, he considered resigning and Defendants could have let

12  him leave, but instead the runner position at his same wage ($17.30 per hour) was created

13  for him at Greer-Wilson.  Doc. 85 ¶¶ 4.2-4.5.

14          Summary judgment is appropriate, Defendants argue, because Plaintiff has

15  presented no evidence showing that Defendants closed Adobe Chapel, thereby

16  eliminating Plaintiff's family counselor position, because of Plaintiff's race or religion.

17  Docs. 84 at 8-9, 89 at 6.  Defendants are correct.

18          Plaintiff asserts that a jury reasonably could infer that Defendants transferred him

19  to Adobe Chapel knowing that it would be closed one week later (Doc. 87 at 6), but

20  presents no evidence in support of this assertion (*see* Doc. 88 ¶ 11).  Nor does he explain

21  how discrimination on the part of Defendants reasonably may be inferred given that a

22  new position at his same wage was created for him at Greer-Wilson.  *See* Docs. 85 ¶¶

23  

24  

25          [2] In an email dated September 17, 2008 – more than two months before Plaintiff's
    demotion – one of Plaintiff's supervisor's recommended that no change in management

26  occur at Crystal Rose because Plaintiff's "numbers are good" and, "being African
    American," Plaintiff helped the company with an EEOC complaint made by another

27  employee by showing that the company is "not racially biased[.]"  Doc. 88-2 at 56.
    Plaintiff does not explain, and it is not otherwise clear to the Court, how this email

28  demonstrates racial animus on the part of Defendants.  Nor did the email result in an
    adverse employment action sufficient to support a disparate treatment claim.

4.3-4.5, 88 ¶ 11.

To survive summary judgment, Plaintiff "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). He must set out "'specific facts showing that there is a *genuine* issue for trial.'" *Anderson*, 477 U.S. at 248 (citation omitted; emphasis added). Mere speculation that Defendants knew Adobe Chapel would close shortly after Plaintiff's transfer does not suffice. *See id.* at 252 (the "existence of a scintilla of evidence" is insufficient; rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]").

### C.  The Warning.

On January 12, 2009, Plaintiff received a written warning concerning customer and vendor complaints purportedly made during his tenure at Crystal Rose, and about his alleged failure to follow through on cases and collect money before services, failure to perform a removal he had committed to doing, and failure to answer calls on a company cell phone. Doc. 88-3 at 42-43. Defendants argue, correctly, that the warning does not rise to the level of an adverse employment action sufficient to support a disparate treatment claim. Doc. 89 at 5.

"[A]n adverse employment action is one that 'materially affects the terms, conditions, or privileges of employment.'" *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008) (citation and alterations omitted). While Plaintiff believes the warning to be unfounded (Doc. 87 at 7), he presents no evidence that it was disseminated to others or resulted in a demotion, a change in job duties, or any other material change in the terms, conditions, or privileges of his employment. In short, the warning cannot reasonably be construed as an adverse employment action. *See Lyons v. England*, 307 F.3d 1092, 1119 (9th Cir. 2002) (written performance evaluation insufficient where it was not published and did not cause the plaintiff to be relieved of responsibilities or saddled with burdensome tasks); *Kortan v. Cal. Youth Auth.*, 217 F.3d 1104, 1113 (9th

Cir. 2000) (undeserved rating on official evaluation insufficient where it was not disseminated or accompanied by a material change in assignment, position, or pay); *Ogawa v. Malheur Home Tele. Co.*, No. CV 08-694-MO, 2010 WL 1542559, at *4 (D. Or. Apr. 14, 2010) (performance review did not constitute adverse employment action where it resulted in no negative consequence).

Moreover, Plaintiff has failed to show that similarly situated employees received preferential treatment.  Plaintiff claims that Walter Mendoza used a racial slur and failed to show up for work for three days, that Mendoza and Deba Thomas were rumored to have stolen money from the company, and that neither received a written warning. Docs. 87 at 12, 88 ¶¶ 29-30.    For purposes of making out a prima facie case of discrimination, however, "individuals are similarly situated when they have similar jobs and display similar conduct." *Vasquez*, 349 F.3d at 641.  The alleged misconduct on the part of Mendoza and Thomas – making racists comments, missing work, and stealing – is not the same as the transgressions recounted in the written warning Plaintiff received, that is, the failure to satisfy customers and vendors and to perform certain job duties (Doc. 88-3 at 42-43).  *See Hudson v. Chertoff*, No. C05-01735RSL, 2007 WL 2288062, at *4 (W.D. Wash. Aug. 3, 2007) (no prima facie case made where the plaintiff failed to show that the other employees "engaged in similar conduct").  Nor does Plaintiff assert that he and the other employees had similar jobs.  Plaintiff's failure to provide "evidence of the job duties, responsibilities, or the type of . . . work being done" by Mendoza and Thomas warrants the granting of summary judgment in favor of Defendants. *Grosz v. Boeing Co.*, 455 F. Supp. 2d 1033, 1040-41 (C.D. Cal. 2006); *see Ogawa*, 2010 WL 1542559, at *3 (the plaintiff failed to make out a prima facie case where he failed to show he "was treated adversely in the same areas in which [a coworker] was treated preferentially"); *White v. AKDHC, LLC*, 664 F. Supp. 2d 1054, 1068 (D. Ariz. 2009) (no prima face case made where the plaintiff was not similarly situated to the other employees "in all material respects") (citing *Moran v. Selig*, 447 F.3d 748, 755 (9th Cir. 2006)).

In summary, Plaintiff has failed to establish a prima facie case of discrimination with respect to the written warning issued in January 2009.  *See* Docs. 45 ¶ 12, 88-3 at 42-43.

**D.     The Pay Cut.**

In March 2009, SNF President Scott Quist directed Plaintiff's supervisor, Eddie Lopez, to start laying off employees due to the company's poor financial condition. Docs. 85 ¶ 5.3, 85-1 at 18-20.  In an effort to save jobs, Lopez decided to cut everyone's pay, including his own.  Docs. 85 ¶ 5.4, 85-1 at 18-21; 88-2 at 65.  Plaintiff claims racial and religious discrimination on the ground that he was the only employee who had his pay reduced more than 10%.  Doc. 87 at 7, 12.

Defendants have articulated legitimate, nondiscriminatory reasons for the wage disparities.  Doc. 84 at 9.  Summary judgment is warranted, Defendants argue, because Plaintiff presents no evidence from which a jury reasonably could find that those stated reasons are pretextual or that Defendants otherwise acted with discriminatory intent. Docs. 84 at 9, 89 at 6-7.  The Court agrees.

Lopez reduced everyone's wage by 10% with three exceptions:   employees earning $12 per hour or less suffered no pay cut, Shannon Owsley's wage was reduced 11% from $16.82 to $15.00 per hour, and Plaintiff's wage was reduced 19% from $17.30 to $14.00 per hour.   Docs. 84 at 9, 85 ¶¶ 5.5-5.6.   The first exception was made, according to Lopez, to spare hardship on employees already making very little money. Doc. 85-1 at 21.  Lopez explained that the difference between Oswley and Plaintiff's wages "is that [Owsley] will remain a funeral arranger and [Plaintiff] is a runner" (Doc. 85-1 at 68), and Lopez "lowered their wages to comport with their actual duties" (Doc. 91-1 at 4).

A plaintiff may show discrimination through direct evidence of racial animus or by presenting circumstantial evidence, that is, evidence showing the employer's proffered explanation for the adverse action to be "unworthy of credence."  *Tex. Dep't of Cmty.*

*Affairs v. Burdine*, 450 U.S. 248, 256 (1981).  The distinction between the two types of evidence is crucial, as it "controls the amount of evidence that the plaintiff must present in order to defeat the employer's motion for summary judgment."  *Coghlan v. Am. Seafoods Co.*, 413 F.3d 1090, 1095 (9th Cir. 2005).  Where the plaintiff relies on circumstantial evidence, that evidence must be both "specific and substantial" in order to create a triable issue as to whether the employer intended to discriminate on the basis of race or religion.  *See id.*; *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1221-22 (9th Cir. 1998).

According to one of Plaintiff's coworkers, one time when Lopez ordered Mexican food for the office and Plaintiff inquired as to why no food had been ordered for him, Lopez stated that Plaintiff does not eat "that type of food."  Doc. 88-3 at 81.  That remark, standing alone, does not constitute direct evidence of discriminatory animus and is insufficient to defeat summary judgment.  Plaintiff presents no evidence connecting the remark to the decision to reduce his wage.  The comment about the type of food Plaintiff eats "is at best weak circumstantial evidence of discriminatory animus toward [Plaintiff]."  *Nesbit v. Pepsico, Inc.*, 994 F.2d 703, 705 (9th Cir. 1993).  This Circuit has made clear that "'stray' remarks are insufficient  to establish discrimination."  *Merrick v. Farmers Ins. Group*, 892 F.2d 1434, 1438 (9th Cir. 1990); *see Rose v. Wells Fargo & Co.*, 902 F.2d 1417, 1423 (9th Cir. 1990) (supervisor's reference to discharged employees as "part of an old-boy network" insufficient to create inference of discrimination); *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 919 (9th Cir. 1996) ("old timers" comment not tied directly to the plaintiff's termination was "weak evidence and not enough to create an inference of age discrimination").  As discussed more fully below, one of Plaintiff's coworkers made a few offensive remarks which arguably may be construed as racist (see Doc. 87 at 8), but "[s]tray remarks not acted upon or communicated to a decision maker are insufficient to establish pretext."  *Mondero v. Salt River Project*, 400 F.3d 1207, 1213 (9th Cir. 2005).

Plaintiff claims that the majority of the employees at Greer-Wilson, including Lopez, are Jehovah's Witnesses, that literature about that religion was disseminated at the funeral home, and that a coworker commented that Lopez preferred employees who practiced his faith.   Doc. 87 at 9.   Because Defendants have articulated legitimate, nondiscriminatory reasons for the wage disparities, the *McDonnell Douglas* frame work "disappears," leaving Plaintiff "with the ultimate *burden of persuading* the trier of fact that [Defendants] intentionally discriminated against [him]."   *Silva v. Chertoff*, No. CV 04-220-TUC-CKJ, 2007 WL 1795786, at *10 (D. Ariz. June 20, 2007) (emphasis in original).   While that burden can be met with circumstantial evidence, that evidence must be substantial.   *See Coghlan*, 413 F.3d at 1095.

Plaintiff has presented no direct evidence of religious discrimination on the part of Lopez or any other employee.   Nor is there evidence showing that Plaintiff himself was preached to or asked to read religious material.   The mere fact that Lopez and other employees are Jehovah's Witnesses who may proselytize their faith is not sufficient circumstantial evidence of pretext to defeat summary judgment.   *See Blanton v. Bunch & Assocs., Inc.*, No. 8:04-CV-1057-T-27MAP, 2006 WL 269981, at *9 (M.D. Fla. Feb. 3, 2006) (no disparate treatment for being non-Baptist where the plaintiff's supervisors were not "trying to save her"); *Tillery v. ATSI, Inc.*, 242 F. Supp. 2d 1051, 1058-62 (N.D. Ala. 2003) (fact that supervisor lectured the plaintiff about her prospects for salvation and strongly suggested that she talk with God was not sufficient evidence of pretext); *Minnis v. Much Shelist Freed Denenberg & Ament, P.C.*, 3 F. Supp. 2d 877, 883 (N.D. Ill. 1997) (fact that the firm was "owned and operated by Jewish people" insufficient to show that the plaintiff was the victim of discrimination); *Chemers v. Minar Ford, Inc.*, No. CIV. 00-1623ADM/AJB, 2001 WL 951366, at *5 (D. Minn. Aug. 20, 2001) ("Neither Title VII nor the [state civil rights act] require Minar, as owner of the business, to abandon his religious beliefs.").

Plaintiff asserts that "despite the claims that financial conditions required [his]

- 10 -

1    demotion and pay cuts for all employees, Lopez received a pay increase." Doc. 87 at 10.

2    But Lopez received the raise at the beginning of 2009, prior to the wage reduction in

3    March 2009.  Doc. 88-2 at 63-65.  As noted above, Lopez was not immune from that

4    wage reduction.

5        Plaintiff further asserts that Lopez hired his daughter for a runner position at

6    Greer-Wilson after the wage reduction was implemented (Doc. 87 at 7), but this assertion

7    is not supported by the cited evidence (*see* Docs. 88 ¶ 16, 88-2 at 87-88).  Moreover,

8    while that alleged hiring may demonstrate nepotism on the part of Lopez, Plaintiff fails to

9    explain how it shows unlawful discrimination.

10       Because Plaintiff has presented no direct evidence of unlawful discrimination on

11   the part of Lopez and no specific and substantial circumstantial evidence that the stated

12   reasons for the pay cuts were mere pretexts for racial or religious discrimination, he

13   "has failed to carry his burden at the third stage of the *McDonnell Douglas* framework."

14   *Aragon v. Rep. Silver State Disposal, Inc.*, 292 F.3d 654, 664 (9th Cir. 2002).

15       **E.    The Third Demotion.**

16       Plaintiff suffered a debilitating back injury in September 2009, and it was not until

17   six months later, on April 13, 2010, that his doctor released him back to work with

18   restrictions.  He was informed that no full-time position was available, but that he could

19   be an on-call employee with no benefits or guaranteed hours. Doc. 88 ¶ 17.  Plaintiff was

20   called to work funeral services on several occasions, but did not always show up.

21   Doc. 85 ¶ 6.3.

22       Defendants assert that it was not able to keep Plaintiff's runner position open

23   indefinitely, and that while no full-time position was available when Plaintiff sought to

24   return to work, Defendants accommodated him with an on-call position.  Docs. 84 at 9,

25   89 at 9.  Plaintiff claims racial and religious discrimination on the ground that "[n]o other

26   employee was changed to on-call status" in April 2010 (Doc. 87 at 12, 15), but apparently

27   fails to recognize that no other employee was returning to work after a six-month leave of

28

absence.   Plaintiff cannot show that similarly situated employees were treated less favorably.  Nor has he shown Defendants' stated reason for his on-call status to be pretext for discrimination.

### F.   Disparate Treatment Claims Summary.

With respect to each challenged employment action, Plaintiff either has failed to make out a prima facie case of discrimination or has failed to create a triable issue as to whether Defendants' stated reasons for the actions are mere pretext for unlawful discrimination.   The Court will grant summary judgment on the disparate treatment claims brought under Title VII and ACRA (count one) and § 1981 (count four).

### III.   Hostile Work Environment Claims (Counts Two and Four).

Plaintiff asserts racially hostile work environment claims in count two  (Title VII and ACRA) and count four (§ 1981).  Doc. 45 ¶ 33.  To establish those claims, Plaintiff must show that, because of his race, he was subjected to unwelcome conduct sufficiently severe or pervasive to alter the terms and conditions of his employment and create an abusive work environment.  *See Vasquez v. County of Los Angeles*, 349 F.3d 634, 642 (9th Cir. 2003).  In evaluating the hostility of a work environment, the Court should consider  the "'frequency of discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'"  *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1113 (9th Cir. 2004) (citation omitted); *see Johnson v. Riverside Healthcare Sys., LP,* 534 F.3d 1116, 1122 n.3 (9th Cir. 2008) (Title VII principles guide the analysis of hostile work environment claims under § 1981).

The conduct purportedly creating a racially hostile work environment consists of Lopez's remark that Plaintiff does not eat Mexican food (Doc. 88-3 at 81), and several comments by coworker Sandra Vargas:  that Plaintiff "acted and looked like his brother Bruce [Abby]" (referring to Plaintiff's African-American predecessor), that "you know how you guys dress," that "corporate would take a Mexican's word over a black person's

word any day," and that she did not like Plaintiff.  Docs. 45 ¶¶ 15-16, 88-1 at 30-32.
Plaintiff also notes that Abby had been called "nigger" and "myate" on at least two
occasions (Doc. 87 at 8), but presents no evidence that he personally heard those racial
slurs.

"Section 1981, like Title VII, is not a 'general civility code.'"  *Manatt v. Bank of
Am., NA*, 339 F.3d 792, 798 (9th Cir. 2003).  Offensive comments and isolated incidents,
unless "extremely serious," are insufficient to create a hostile work environment.  *Id.*
While the above-described comments are offensive, they are not "sufficiently severe or
pervasive as to alter the terms and conditions of [Plaintiff's] employment and create an
abusive working environment."  *Totah v. Lucasfilm Entm't Co.*, No. C-09-4051 MMC,
2010 WL 5211457, at *5 (N.D. Cal. Dec. 16, 2010);  *see Vasquez*, 349 F.3d at 642-43 (no
hostile environment where plaintiff was told that he had a "typical Hispanic macho
attitude" and should transfer jobs because "Hispanics do good in the field"); *Manatt*, 339
F.3d at 798-99 (no hostile environment where the plaintiff was ridiculed on numerous
occasions for the way she looked, her accent, and her Chinese heritage); *Kortan v. Cal.
Youth Auth.*, 217 F.3d 1104, 1111 (9th Cir. 2000) (no hostile environment where
supervisor referred to females as "castrating bitches" and "Madonnas" in front of plaintiff
on several occasions).  The Court will grant summary judgment on the hostile work
environment claims brought under Title VII and ACRA (count two) and § 1981 (count
four).

The hostile work environment claims appear to be based solely on race.  *See*
Doc. 45 ¶¶ 32-36, 52.  To the extent Plaintiff purports to assert such a claim based on
religion (*see* Doc. 84 at 11), summary judgment will be granted.  The comments Vargas
made about Lopez's preference for Jehovah's Witnesses (Doc. 88 ¶¶ 26-27) are stray
remarks, and providing religious literature at work does not "reach the level of hostility
or abuse."  *Chemers*, 2001 WL 951366, at 6.  In short, "there is insufficient evidence of
harassment on the basis of religion to support a [hostile work environment] claim."  *Id.*;

*see also Tillery v. ATSI, Inc.*, No. CV-01-S-2736-NE, 2003 WL 25699080, at *9-10 (N.D. Ala. Apr. 14, 2003) (granting summary judgment where the plaintiff "did not subjectively perceive her working environment to be either severely or pervasively hostile or abusive" because of her religion).

**IV.    Retaliation and Wrongful Termination Claims (Counts Three and Four).**

Title VII and ACRA make it unlawful for an employer to discriminate against an employee because he has filed a charge of discrimination or otherwise opposed an unlawful employment practice. 42 U.S.C. § 2000e-3(a); A.R.S. § 41-1464(A). Section 1981 similarly prohibits an employer from retaliating against an employee for having complained about race discrimination. *Manatt*, 339 F.3d at 800-01. Retaliation claims under Title VII and § 1981, and wrongful termination claims under ACRA, share identical legal standards and are subject to the summary judgment framework set forth in *McDonnell Douglas*. *See id.* at 801; *CBOS W., Inc. v. Humphries*, 553 U.S. 442, 455 (2008); *Najar v. State*, 9 P.3d 1084, 1086 (Ariz. Ct. App. 2000).

Under that framework, the plaintiff must first establish a prima facie case by showing a protected activity, a materially adverse action, and a causal link between the two. *Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1108 (9th Cir. 2008); *Burlington N. & Santa Fe Ry. Co. v. White*, 126 S. Ct. 2405, 2409 (2006). If the defendant provides a legitimate, non-retaliatory reason for its action, the plaintiff "bears the ultimate burden of showing defendant's stated reasons to be merely pretextual[.]" *Munoz v. Mabus*, 630 F.3d 856, 865 (9th Cir. 2010) (citing *McDonnell Douglas*, 411 U.S. at 802-04).

Plaintiff contends that he was "demoted" from a full-time runner position to an on-call employee in retaliation for having filed a charge of discrimination with the EEOC and this lawsuit. Docs. 87 at 11, 16; 88 ¶ 44. No law required Defendants to keep Plaintiff's position open while he recovered from his back injury. Defendants state that they did not retaliate against Plaintiff, but instead gave him preferential treatment by finding a part-time position for him when he sought to return to work. Docs. 84 at 12, 89

at 9.

Plaintiff contends that the timing of his "demotion" to on-call status, standing alone, is sufficient to survive summary judgment.  Doc. 87 at 16.  "In some cases, temporal proximity can by itself constitute sufficient circumstantial evidence of retaliation for purpose of both the prima facie case and the showing of pretext."  *Dawson v. Entek Int'l*, 630 F.3d 928, 937 (9th Cir. 2011).  This is not one of those cases.

Plaintiff filed his EEOC charge in August 2009 (Doc. 84 at 12), and this lawsuit in early January 2010 (Doc. 1).  He experienced no alleged adverse action until three months later, when he was changed to on-call status in mid-April 2010.  To defeat summary judgment, however, the temporal proximity between protected activity and adverse actions must be "very close."  *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001) (citing cases finding three and four-month periods too long); *see Villiarimo*, 281 F.3d at 1065 ("timing alone will not show causation in all cases; rather, in order to support an inference of retaliatory motive, the [adverse action] must have occurred fairly soon after the employee's protected expression").

Plaintiff asserts that "[a]t the very first opportunity that Defendants had to adversely affect his employment following the protected activity, they did so."  Doc. 87 at 16.  But Plaintiff does not dispute that he continued to work for Defendants after having filed his EEOC charge in August 2009.  Moreover, as explained more fully above, Defendants have provided a legitimate, non-retaliatory reason for the adverse action, and Plaintiff presents no specific and substantial evidence showing that reason to be pretextual.  Ultimately, Plaintiff is left with only the timing of the adverse action.  When considered in light of Defendants' stated reason for the adverse action, however, that timing is insufficient to create a triable issue of causation or pretext.  The Court will grant summary judgment on the retaliation and wrongful termination claims (counts three and four).

1

**V.     Inflication of Emotional Distress (Count Five).**

2

        Based on Plaintiff's non-opposition (Doc. 87 at 17), the Court will grant summary

3

judgment on the claim for intentional infliction of emotional distress.

4

**VI.    Negligent Supervision Claim (Count Six).**

5

        Plaintiff claims that Defendants engaged in negligent supervision by allowing

6

employees, among other things, to make derogatory comments toward Plaintiff about his

7

race.  Doc. 45 ¶ 60.  Defendants argue that this claim is barred by the exclusive remedy

8

provisions of Arizona's workers' compensation statute.  Doc. 84 at 14.  The Court agrees.

9

        The relevant statute bars tort claims against an employer unless the employee's

10

injury is caused by the employer's "willful misconduct," that is, "an act done knowingly

11

and purposely with the direct object of injuring another."  A.R.S. § 23-1022; *see Irvin*

12

*Investors, Inc. v. Super. Ct.*, 800 P.2d 979, 980-82 (Ariz. Ct. App. 1990).  "Even gross

13

negligence  or wantonness amounting to gross negligence does not constitute a 'willful

14

act' under this definition[.]"  *Diaz v. Magma Copper Co.*, 950 P.2d 1165, 1172 (Ariz. Ct.

15

App. 1997).

16

        Count six alleges that Defendants breached their duty to supervise its employees

17

"in a reasonable and non-negligent manner."  Doc. 45 ¶ 60.  "[T]his claim for relief is

18

based on an allegation of negligence, rather than conduct intentionally designed to harm

19

Plaintiff, in contrast to Plaintiff's claim for relief based on intentional infliction of

20

emotional distress."  *Mosakowski v. PSS World, Med., Inc.*, 329 F. Supp. 2d 1112, 1131

21

(D. Ariz. 2003).  Because Arizona law precludes an employee from bringing a tort claim

22

premised on negligent supervision, Defendants are entitled to summary judgment on

23

count six.  *Id.*; *see Diaz*, 950 P.2d at 1172 (employer's acts did not constitute willful

24

misconduct even though it ignored safety hazards and delayed the access of paramedics

25

where there was no evidence that the employer intended to injure the plaintiff).

26

**VII.   Plaintiff's Papers.**

27

        It is important to note that Plaintiff's papers in this case were difficult to use and,

28

to some extent, tended to "obfuscate rather than promote an understanding of the facts[.]" *Keenan v. Allan*, 91 F.3d 1275, 1278-79 (9th Cir. 1996).  Plaintiff's exhibits total 246 pages (Docs. 88-1, 88-2, 88-3), most of which were not cited in his response brief (Doc 87), and only a few were cited in the discussion section of the brief (Doc. 87 at 11-18).  *See* LRCiv 56.1(a), (e).  Instead of setting forth each material fact in a separately numbered paragraph, *see* LRCiv 56.1(a), Plaintiff lumped multiple facts together in a single paragraph (Doc. 88 at 10-20).  Plaintiff routinely "denied" statements of fact provided by Defendants without citation to the "specific admissible portion of the record supporting [Plaintiff's] position[.]"  LRCiv 56.1(b).

The Court is not obligated to "'scour the record in search of a genuine issue of triable fact.'"  *Keenan*, 91 F.3d at 1279 (citation omitted).  Instead, the Court relies on "'the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment.'"  *Id.*; *see* Fed. R. Civ. P. 56(e)(2).  "As the Seventh Circuit observed in its now familiar maxim, 'judges are not like pigs, hunting for truffles buried in briefs.'"  *Independent Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)) (alteration omitted).

The Court nonetheless has carefully reviewed Plaintiff's papers in search of a triable issue.  Having found none, the Court will grant Defendants' motion for summary judgment.

**IT IS ORDERED:**

1.	Defendants' motion for summary judgment (Doc. 84) is **granted**.

2.	The Clerk is directed to enter judgment accordingly and terminate this case.

Dated this 13th day of May, 2011.

_____
David G. Campbell
United States District Judge